# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VASILIOS PAPPAS** | **CIVIL ACTION** |
| **versus** | **NO. 12-423** |
| **HOWARD PRINCE, WARDEN** | **SECTION: "G" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Vasilios Pappas, is a state prisoner incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana. On April 27, 2009, he pleaded guilty under Louisiana law to three counts of second degree sexual battery (Counts 1, 7, and 10 of the bill of information), two counts of second degree kidnapping (Counts 2 and 14), four counts of false imprisonment with a dangerous weapon (Counts 3, 5, 9, and 11), five counts of aggravated battery (Counts 4, 6, 12, and 13), and one count of second degree battery (Count 15). He was then sentenced as follows: on each of Counts 1, 2, 7, and 10 to a term of fifteen years imprisonment without benefit of probation,

parole, or suspension of sentence; on each of Counts 3, 4, 5, 6, 8, 9, 11, 12, 13, and 14 to a term of ten years imprisonment; and on Count 15 to a term of five years imprisonment. It was ordered that those sentences run concurrently.[1]

On or about May 10, 2010, petitioner filed an application for post-conviction relief with the state district court.[2] On June 2, 2010, the court summarily denied two of petitioner's claims and ordered the state to file a response to the remaining claim.[3] On or about November 11, 2010, petitioner also filed a motion to withdraw his guilty plea.[4] On November 16, 2010, the court then denied both the remaining post-conviction claim and the motion to withdraw the guilty plea.[5] Petitioner's related writ applications were then denied by the Louisiana First Circuit Court of Appeal on April 13, 2011,[6] and by the Louisiana Supreme Court on November 14, 2011.[7]

On or about January 13, 2012, petitioner filed the instant federal application for *habeas corpus* relief. In support of his application, he asserted the following claims:

---

[1] State Rec., Vol. II of III, transcript of April 27, 2009; State Rec., Vol. III of III, minute entry dated April 27, 2009.

[2] State Rec., Vol. II of III.

[3] State Rec., Vol. II of III, Order dated June 2, 2010.

[4] State Rec., Vol. II of III.

[5] State Rec., Vol. II of III, transcript of November 16, 2010; State Rec., Vol. III of III, minute entry dated November 16, 2010.

[6] State v. Pappas, No. 2010 KW 2350 (La. App. 1st Cir. Apr. 13, 2011); State Rec., Vol. II of III.

[7] State v. Pappas, 75 So.3d 938 (La. 2011) (No. 2011-KP-0980); State Rec., Vol. II of III.

1. Petitioner's counsel was ineffective for failing to appeal the denial of a motion to quash;

2. Petitioner's guilty pleas were invalid because he was erroneously led to believe that he would be eligible for a "good time" early release; and

3. Petitioner's counsel was ineffective for leading him to believe that he would be eligible for a "good time" early release.

In its response in this proceeding, the state conceded that petitioner's federal application was timely filed.[8] However, the state argued that petitioner's federal application should be dismissed as a mixed petition because he had not exhausted his remedies in state court with respect to his claim that his counsel was ineffective for failing to appeal the denial of a motion to quash.[9]

In light of the state's position, petitioner has filed a motion requesting that he be allowed to withdraw that unexhausted claim and to proceed on only his two exhausted claims.[10]

I. Petitioner's Motion

It is clear that "[a] habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice." Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998). However, it is equally clear that a petitioner may avoid this result by

---

[8] Rec. Doc. 10, p. 4.

[9] Rec. Doc. 10, pp. 4-5.

[10] Rec. Doc. 13.

"amending or resubmitting the habeas petition to present only exhausted claims to the district court." Rose v. Lundy, 455 U.S. 509, 510 (1982); see also Neslo v. Cain, No. 97-31025, 1998 WL 546499, at *1 (5th Cir. Aug. 10, 1998) ("Prisoners who submit mixed petitions are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of their claims."). In that a petitioner clearly has a right to avoid dismissal of a mixed petition by withdrawing an unexhausted claim, it is recommended that petitioner's motion to withdraw his claim that his counsel was ineffective for failing to appeal the denial of a motion to quash be **GRANTED**.

Because that motion should be granted, the Court will now address petitioner's two remaining claims.

## II. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal*. As a condition for obtaining habeas

> *corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

### III.  Petitioner's Claims

### A.  Invalid Guilty Pleas

Petitioner's first claim is that his guilty pleas were invalid because he was erroneously led to believe that he would be eligible to earn an early release. This claim is premised on Louisiana laws which allow some prisoners to earn an early release by accruing "good time" credits for good behavior during their incarceration. See La.Rev.Stat.Ann. §15:571.3 *et seq.* However, prisoners convicted of certain offenses are statutorily ineligible for an early release based on "good time." See La.Rev.Stat.Ann. §15:571.3(B). For example, petitioner is ineligible to earn a "good time" early release because he was convicted of second degree sexual battery. See La.Rev.Stat.Ann. § 15:571.3(B)(3)(f).

Unfortunately, from a review of the transcript in this case, it appears that everyone concerned, i.e. the judge, the prosecutor, defense counsel, and petitioner, was under the impression that petitioner would at least be *eligible* to earn a "good time" early release. For example, the following portion of the transcript is particularly telling:

> BY THE COURT:
>     ....
>     I have agreed to sentence you as follows. On Counts 1 and 2, 15 years. I'm sorry. Counts 1, 2, 7 and 10, 15 years. Counts 3, 4, 5, 6, 8, 10, 11, 12, 13, and 14 to 10-year sentences, and Count 15 to a five-year sentence. All of those sentences are to run concurrently and

the 15-year sentence imposed is without benefit of probation, parole, or suspension of sentence.
Is that your understanding of the sentencing agreement?

BY MR. PAPPAS:
Say again. Without benefit of?

BY THE COURT:
Probation, parole, or suspension of sentence. All of the 15-year sentences.

BY MR. PAPPAS:
So that means I would do how much of the 15?

BY THE COURT:
I'm not going to represent to you how the Department of Corrections is going to compute your time. All I'm going to tell you is that I'm imposing that sentence, and however they compute good time or anything else is completely up to the Department of Corrections.

BY MR. PAPPAS:
Okay.

BY THE COURT:
All right. Now, is that your understanding of the sentence?

BY MR. PAPPAS:
(Affirmative response).

BY THE COURT:
You have to answer me out loud.

BY MR. PAPPAS:
Yes.

BY THE COURT:
You've discussed all of this with your attorney?

BY MR. PAPPAS:
Yes, sir.

> BY MR. FAWER [defense counsel]:
> For the record, Your Honor, just so you understand what I said to Mr. Pappas, is that would be a max of 85 percent of the 15.
>
> BY THE COURT:
> I can't represent that.
>
> BY MR. FAWER:
> I know that. I'm just telling you what I said. It can't be more than that, and, of course, then there's credit for time served.
>
> BY MR. OUBRE [the prosecutor]:
> My understanding is that 85 percent is a good time rate. It's something that he has to earn, so it could be more than that if there was bad behavior in prison.
>
> BY MR. FAWER:
> I understand that, but it's 85 percent.
>
> BY THE COURT:
> There will be credit for time served. I am not denying good time, but how the Department of Corrections computes your sentence is up to them, not me. Do you understand that?
>
> BY MR. PAPPAS:
> (Affirmative response).
>
> BY THE COURT:
> You have to answer me out loud.
>
> BY MR. PAPPAS:
> Yes.[11]

Therefore, while petitioner was not guaranteed a "good time" early release, because such a release is granted only if a prisoner in fact earns it, it is fairly obvious that he was incorrectly

---

[11] State Rec., Vol. II of III, transcript of April 27, 2009, pp. 25-28

led to believe that he would at least be *eligible* to earn "good time." The question, therefore, is whether that misunderstanding rendered his pleas invalid.

"It is beyond dispute that a guilty plea must be both knowing and voluntary." Parke v. Raley, 506 U.S. 20, 28 (1992). However, when a *habeas* petitioner challenges the validity of his guilty plea, he carries the burden of proving his plea was not in fact knowing and voluntary. See, e.g., Hines v. Louisiana, 102 F. Supp. 2d 690, 694 (E.D. La. 2000). For the following reasons, the undersigned finds that petitioner has not met his burden of proof in this case.

For a plea to be considered knowing, "the defendant must have a full understanding of what the plea connotes and of its consequence." United States v. Hernandez, 234 F.3d 252, 255 (5th Cir. 2000) (quotation marks omitted). That said, the United States Fifth Circuit Court of Appeals has held that "[t]he defendant need only understand the direct consequences of the plea; he need not be made aware [of] every consequence that, absent a plea of guilty, would not otherwise occur." Id. With respect to sentencing issues, a matter is a "direct consequence" of the plea only if it is related to either the length or nature of the sentence. See id. at 256-57. Therefore, a defendant is fully aware of his plea's "direct consequences" as long as he understands the length of the sentence he might possibly receive. Hobbs v. Blackburn, 752 F.2d 1079, 1082 (5th Cir. 1985). Here, petitioner clearly understood the length of the sentences he faced, and he further understood that he might be required to serve the full term of his sentences, in that even prisoners who are in fact *eligible* to earn "good time" credits may not do so and therefore may be required to serve their full sentences.

A guilty plea must also be "voluntary." The terms "knowing" and "voluntary" "are frequently used interchangeably, although, strictly speaking, the terms embody different concepts." Hernandez, 234 F.3d at 254 n.3. Thus, while a "knowing" plea is one where the defendant is aware of the direct consequences of his plea, a "voluntary" plea is one not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." Id.

Here, petitioner alleges that his pleas were involuntary because they were based on a misunderstanding that he would be eligible to earn "good time" credits to reduce the length of his incarceration. If he had simply subjectively misunderstood the law *without* any affirmative statements by the court, the prosecutor, or defense counsel regarding "good time" eligibility, then his claim would clearly be frivolous. For example, in James v. Cain, 56 F.3d 662, 666-67 (5th Cir. 1995), the United States Fifth Circuit Court of Appeals held: "The United States Constitution does not require the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary. ... A defendant's mere expectation about the commutation and parole process is simply no ground for habeas corpus relief." However, in James, the Fifth Circuit took care to note:

> The trial procedure itself had nothing to do with any misunderstanding James may have had as to parole procedure and the commutation requirement. *It is clear that neither the trial court nor the prosecutor ever affirmatively mislead James as to the Louisiana parole procedure.* To the contrary, the trial court provided James with completely accurate information and verified that James fully understood the sentencing ramifications of his guilty plea. Accordingly, *James did not enter into his plea involuntarily based on misinformation for which the trial court itself was responsible.*

Id. at 667 (emphasis added). Similarly, in an earlier case, the Fifth Circuit had held: "*If a defendant's subjective belief was not based on any promises made by the defense attorney, the prosecutor, or the court*, the law of this Circuit holds that the defendant's subjective belief alone is not sufficient to invalidate a guilty plea." Spinelli v. Collins, 992 F.2d 559, 561 (emphasis added; quotation marks and ellipsis omitted).

However, the undersigned finds that, in the portion of the plea colloquy previously quoted, the comments by the judge, prosecutor, and defense counsel would have led a reasonable person wrongly to believe that "good time" release was at least a *possibility* in the instant case. That is problematic, because unfulfilled or unfulfillable promises can render a plea involuntary if the accused was induced to plead guilty based on such promises. See, e.g., McKenzie v. Wainwright, 632 F.2d 649, 651 (5th Cir. 1980) ("[W]hen a defendant pleads guilty on the basis of a promise by his defense attorney or the prosecutor, whether or not such promise is fulfillable, breach of that promise taints the voluntariness of his plea.").

However, even in those cases where a promise was made, the breaking of the promise does not necessarily entitle a prisoner to relief. Rather, relief is warranted only "when a plea rests in any *significant degree* on a promise or agreement of the prosecutor, *so that it can be said to be part of the inducement or consideration* ...." Santobello v. New York, 404 U.S. 257, 262 (1971) (emphasis added). A promise qualifies as "significant" only if the accused likely would not have pleaded guilty but for the promise. See United States v. Birdwell, 887 F.2d 643, 645 (5th Cir. 1989) ("[I]f a prisoner's guilty plea is based 'in any significant degree' on a prosecutor's promise *which reasonably may be said to be part of the consideration for the agreement*, that promise must be

fulfilled. ... If, as conceded, the state offer was a significant factor in inducing Birdwell to plead guilty, *to the extent that he likely would not otherwise have done so*, his guilty plea is tainted." (emphasis added)).

In the last reasoned state court judgment addressing petitioner's claim, the state district judge rejected the claim, holding that he did not believe that the representations concerning "good time" induced petitioner's pleas; rather the judge concluded that "it was more the sentence that was finally arrived at after lengthy negotiation that involved a plea to many violations of various statutes involving numerous victims ...."[12] Without additional reasons assigned, the claim was then likewise denied by the Louisiana First Circuit Court of Appeal[13] and by the Louisiana Supreme Court.[14] This Court must defer to that state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Fields v. Gibson, 277 F.3d 1203, 1212 (10th Cir. 2002). It was not.

There simply is no reasonable basis to conclude that petitioner's pleas rested in any significant degree on the understanding that he would be eligible to earn an early release. For example, there is no evidence that the eligibility for "good time" was a negotiated term of the plea agreement. Moreover, petitioner does not state that he would have rejected the plea agreement and

---

[12] State Rec., Vol. II of III, transcript of November 16, 2010, p. 13.

[13] State v. Pappas, No. 2010 KW 2350 (La. App. 1st Cir. Apr. 13, 2011); State Rec., Vol. II of III.

[14] State v. Pappas, 75 So.3d 938 (La. 2011) (No. 2011-KP-0980); State Rec., Vol. II of III.

insisted on going to trial had he known that he was ineligible for good time. Further, even if he had made such a representation, this Court would not find it credible because he benefitted greatly from the plea agreement. He was charged with numerous serious crimes against multiple victims. By agreeing to plead guilty, he received generous concessions: three charges of forcible rape were reduced to the lesser charge of second degree sexual battery, charges were nolle prossed, a victim agreed not to pursue additional charges in New Hampshire, he was guaranteed that his sentences would run concurrently, and he was guaranteed a term of imprisonment not exceeding a total of fifteen years.[15]

In light of the foregoing, the undersigned finds that petitioner has failed to show that the state court's decision rejecting his ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the deferential standards of review mandated by the AEDPA, this claim should be denied.

## B. Ineffective Assistance of Counsel

Petitioner next asserts the related claim that his counsel was ineffective for leading him to believe that he would be eligible for a "good time" release. In the state post-conviction proceedings, this claim was likewise rejected by the state district court,[16] the Louisiana First Circuit Court of Appeal,[17] and by the Louisiana Supreme Court.[18]

---

[15] State Rec., Vol. II of III, transcript of April 27, 2009, pp. 2-4.

[16] State Rec., Vol. II of III, transcript of November 16, 2010, pp. 12-13.

[17] State v. Pappas, No. 2010 KW 2350 (La. App. 1st Cir. Apr. 13, 2011); State Rec., Vol. II of III.

[18] State v. Pappas, 75 So.3d 938 (La. 2011) (No. 2011-KP-0980); State Rec., Vol. II of III.

Because an ineffective assistance claim is a mixed question of law and fact, this Court must again defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland[ v. Washington, 466 U.S. 668, 697 (1984),] standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claim.

To prevail on an ineffective assistance claim, a petitioner must demonstrate *both* that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). If a petitioner makes an insufficient showing

as to either of the two prongs of inquiry, the court may dispose of the ineffective assistance claim without addressing the other prong. Id.

In the instant case, the Court need not determine whether counsel's performance was deficient, because petitioner cannot show that he was prejudiced by that performance. In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995). For the reasons previously noted in the discussion of petitioner's prior claim, the undersigned finds that there no reasonable probability that petitioner would have rejected the extremely beneficial plea agreement and insisted on going to trial even if he had known that he was ineligible to earn a "good time" early release.

Therefore, petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the AEDPA's doubly deferential standard applicable to ineffective assistance claims, this claim should be rejected.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's motion to withdraw his claim that his counsel was ineffective for failing to appeal the denial of a motion to quash, Rec. Doc. 13, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that his federal *habeas corpus* petition be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[19]

New Orleans, Louisiana, this seventeenth day of May, 2012.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[19] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.