# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VASILIOS PAPPAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-423** |
| **HOWARD PRINCE** | **SECTION: "G"(1)** |

## ORDER AND REASONS

Before the Court is Petitioner Vasilios Pappas's ("Pappas") Motion to Abandon Claim[1] and his Objections to Magistrate's Report and Recommendations,[2] which recommended the dismissal of Pappas's *habeas* petition with prejudice and without an evidentiary hearing.[3] For the reasons that follow, the magistrate judge's recommendation is adopted in part and rejected in part.

## I. Background

### A. Factual Background

Pappas is a state prisoner incarcerated in Elayn Hunt Correctional Facility in St. Gabriel, Louisiana. On April 27, 2009, he pled guilty under Louisiana law to three counts of sexual battery, two counts of second degree kidnaping, four counts of false imprisonment with a dangerous weapon, five counts of aggravated battery, and one count for second degree battery.[4] The state court judge sentenced Pappas pursuant to a plea agreement, to serve a term of fifteen years without probation,

---

[1]  Rec. Doc. 13.

[2]  Rec. Doc. 16.

[3]  Report and Recommendation, Rec. Doc. 15.

[4]  *Id.* at p. 1.

parole, or suspension of sentence, a term of ten years, and a term of five years, all to run concurrently.[5]

On or about May 10, 2010, Pappas filed an application for post-conviction relief with the state district court. On June 2, 2010, the state court dismissed two of Pappas's claims and ordered the state to file a response to the remaining claim. On November 11, 2010, Pappas filed a motion to withdraw his guilty plea. On November 16, 2010, the state court denied both the remaining post-convention claim and the motion to withdraw his guilty plea.[6] Pappas appealed these decisions, and they were denied by both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.[7]

On or about February 13, 2012, Pappas filed the instant federal application for *habeas corpus* relief.[8] In support of his application, he asserted the following claims:

1. His counsel was ineffective for failing to appeal the denial of a motion to quash

2. His guilty pleas were invalid because he was erroneously led to believe that he would be eligible for a "good time" early release; and

3. His counsel was ineffective for leading him to believe he would be eligible for a "good time" early release.

The state conceded that Pappas's application was timely, but argued that the application should be dismissed as a "mixed" petition because he had not yet exhausted his remedies in state court with

---

[5] *Id.* at pp. 1-2.

[6] *Id.* at p. 2.

[7] *Id.*

[8] Rec. Doc. 1.

respect to the claim of ineffective assistance of counsel for failing to appeal the denial of a motion

to quash.[9] In response, Pappas filed a motion requesting that he be allowed to withdraw that

unexhausted claim and proceed only on his two exhausted claims.[10]

### B. Report and Recommendation of Magistrate Judge

#### 1. Pappas's Request to Withdraw Unexhausted Claim

The magistrate judge acknowledged that mixed petitions containing exhausted and

unexhausted claims should be dismissed without prejudice.[11] However, the magistrate judge further

acknowledged that a petitioner is allowed to amend and resubmit a *habeas* petition to present only

exhausted claims to the district court.[12] Therefore, the magistrate judge recommended that Pappas

be permitted to withdraw the unexhausted claim and proceed on his two remaining claims.

#### 2. Standard of Review on Remaining Claims

Before addressing the merits of Pappas's remaining claims, the magistrate judge thoroughly

outlined the standard to be applied to a petitioners' *habeas corpus* petition. The Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), overruled prior law and requires a district court

to presume that questions of pure fact determined by a state court are correct unless the decision was

"based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."[13] For pure questions of law, or mixed questions of law and fact, a federal court

must defer to the state court's decision on the merits of such a claim unless that decision was

---

[9]  Rec. Doc. 10 at pp. 4-5.

[10]  Rec. Doc. 13.

[11]  Rec. Doc. 15 at p. 3 (citing *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998)).

[12]  *Id.* at pp. 3-4 (citing *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

[13]  28 U.S.C. § 2254(d)(2), (e)(1).

"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[14] "Contrary to" and "unreasonable application" have independent meaning.[15]

Regarding the "contrary to" clause, the United States Court of Appeal for the Fifth Circuit has explained:

 A state court decision is 'contrary to ... clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases. A state-court decision will also be contrary to ... clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent. A state-court decision involves an unreasonable application of [Supreme Court] precedent if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Finally, AEDPA requires us to presume state-court findings of fact to be correct "unless the petitioner rebuts that presumption by clear and convincing evidence.[16]

The United States Supreme Court has explained that the "unreasonable application" clause means:

[A] state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[17]

The Fifth Circuit has distinguished between an unreasonable application as opposed to an incorrect one: "Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect

---

[14]  28 U.S.C. § 2254(d)(1).

[15]  *Bell v. Cone*, 535 U.S. 685, 694 (2002).

[16]  *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, and footnotes omitted), *cert. denied*, 131 S.Ct. 294 (2010).

[17]  *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

4

application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable. 'A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'"[18] The United States Supreme Court has acknowledged that this is a strict and narrow review.[19]

### 3. Addressing Pappas's Claims

#### a. Invalid Guilty Pleas

In addressing this claim, the magistrate judge acknowledged that it was evident from the trial transcript that the judge, prosecutor, defense counsel, and Pappas, were under the impression that Pappas would at the very least be eligible for "good time" early release.[20] While the magistrate judge found that the record was clear that Pappas was led to believe he was eligible for this release, she determined that the critical question was whether "that misunderstanding rendered his pleas invalid."

Citing the Supreme Court in *Parke v. Raley*,[21] the magistrate judge reasoned that a guilty plea must be knowing and voluntary. However, on a *habeas* petition, the petitioner carries the burden of proof on this issue. Citing Fifth Circuit precedent, the magistrate judge correctly stated that for a

---

[18] *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (quoting *Harrington v. Richter* 131 S.Ct. 770, 786 (2011)), *cert. denied*, 132 S.Ct. 1537 (2012).

[19] *Harrington*, 131 S.Ct. at 786-87 ("It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.") (internal citations omitted).

[20] Rec. Doc. 15 at pp. 7-9 (colloquy among the state court judge, defense counsel, prosecutor, and Pappas, were all imply he is eligible for "good time" early release).

[21] 506 U.S. 20, 28 (1992).

plea to be considered "knowing" a defendant must have a full understanding of what the plea connotes and its consequences.[22] Further, "[t]he defendant need only understand the direct consequences of the plea; he need not be made aware [of] every consequence that, absent a plea of guilty, would not otherwise occur."[23] A direct consequence of the plea agreement concerns only the length and nature of the sentence.[24] The magistrate judge concluded, "Here, petitioner clearly understood the length of the sentences he faces, and he further understood that he might be required to serve the full term of his sentences, in that even prisoners who are in fact *eligible* to earn 'good time' credits may not do so and therefore may be required to serve their full sentences."[25]

Regarding "voluntary," the magistrate judge explained that this is satisfied as long as the plea is not induced "'by threats, misrepresentation, unfulfilled promises, or promises of an improper nature.'"[26] While a defendant's mere expectation of commutation or parole is not a ground for *habeas* relief, if that expectation is the result of the trial court or the prosecutor misleading the defendant, then the defendant may have a colorable claim.[27]

Based on the trial record and the statements made by the judge, prosecutor, and defense counsel, the magistrate judge concluded that "[these statements] would have led a reasonable person wrongly to believe that 'good time' release was at least a *possibility* in the instant case. That is problematic, because unfulfilled or unfulfillable promises can render a plea involuntary if the

---

[22] Rec. Doc. 15 at p. 10 (citing *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir. 2000)).

[23] *Hernandez*, 234 F.3d at 256.

[24] *Id.*

[25] Rec. Doc. 15 at p. 10 (emphasis in original).

[26] *Id.* at p. 11 (quoting *Hernandez*, 234 F.3d at 254 n.3).

[27] *Id.* (citing *James v. Cain*. 56 F.3d 662, 666-67 (5th Cir. 1995)).

accused was induced to plead guilty based upon such promises."[28] However, the magistrate judge noted that even when promises are made and broken, a petitioner is only entitled to relief "'when a plea rests in any *significant degree* on a promise or agreement of the prosecutor, *so that it can be said to be part of the inducement or consideration*.'"[29] A promise is considered significant only if the accused likely would not have pleaded guilty but for the promise.[30]

The magistrate judge highlighted that in the last state court judgment addressing Pappas's claims, the court found that the representations concerning "good time" did not induce his pleas, but rather "'it was more the sentence that was finally arrived at after lengthy renegotiation that involved a plea to many violations of various statutes involving numerous victims.'"[31] The magistrate judge reasoned that based on the heightened standard outlined earlier, unless this determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," she was required to defer to the state court's factual finding.[32]

The magistrate judge further explained that there was "simply no reasonable basis to conclude that [Pappas's] pleas rested in any significant degree on the understanding that he would be eligible to earn early release."[33] Moreover, she found that their was no evidence that the

---

[28] *Id.* at p. 12 (emphasis in original) (citing *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980)).

[29] *Id.* (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971) (emphasis added by magistrate judge)).

[30] *Id.* (citing *United States v. Bagwell*, 887 F.2d 643, 645 (5th Cir. 1989)).

[31] *Id.* at p. 13 (citing *State v. Pappas*, No. 2010 KW 2350 (La. App. 1 Cir. Apr. 13, 2011); State Rec., Col. II of III).

[32] *Id.*

[33] *Id.*

availability of "good time" early release was part of the plea negotiations. The magistrate judge further noted that Pappas had not stated that he would have rejected the plea agreement if he had known he was ineligible for "good time."[34] However, she went on to note that "even if he had made such a representation, this Court would not find it credible because he benefitted greatly from the plea agreement. He was charged with numerous serious crimes against multiple victims. By pleading guilty, he received generous concessions."[35] These purported concessions included a reduction in charges from forcible rape to sexual battery, charged were nolle prossed, a victim agreed not pursue additional charges in New Hampshire, and his sentences would run concurrently. As such, the magistrate judge concluded that Pappas had "failed to show that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as described by the Supreme Court of the United States.[36] This Court assumes the magistrate judge meant to refer to the "invalid guilty pleas" claim as this is what the discussion centered around and the discussion of the ineffective assistance of counsel claims follows.

### b. Ineffective Assistance of Counsel Claim

The magistrate judge noted that Pappas's claim that his counsel was ineffective for leading him to believe that he would be eligible for a "good time" release was rejected all the way up to the Louisiana Supreme Court. The magistrate judge reasoned that because this claim involves a mixed

---

[34] *Id.* at pp. 13-14.

[35] *Id.* at p. 14.

[36] *Id.*

8

question of law and fact, she must again defer to the state court decision rejecting the claim unless it was contrary to, or involved an unreasonable application of, clearly established federal law, as described by the Supreme Court of the United States."[37] The Magistrate judge then quoted a long portion of the Supreme Court's decision in *Harrington v. Richter*,[38] to explain that under AEDPA, federal *habeas corpus* review of ineffective assistance of counsel is "doubly deferential":

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ——, ——, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).[39]

The magistrate judge then quoted another long excerpt from *Harrington*:

> "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and

---

[37] *Id.* at p. 15.

[38] 131 S.Ct. 770.

[39] *Id.* at 785-86.

forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at ——, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.[40]

Directly thereafter, the magistrate judge concluded that "under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to [Pappas's] ineffective assistance of counsel claim."[41] The magistrate judge acknowledged that under *Strickland v. Wahsington*,[42] in order to succeed on a ineffective assistance of counsel claim, a petitioner must prove both deficient performance and that it prejudiced his defense. The magistrate reasoned that Pappas could not prevail on the second prong, which would obviate the need to

---

[40] *Id.* at 788.

[41] Rec. Doc. 15 at p. 16.

[42] 466 U.S. 668 (1984).

address the first prong, because he could not show that but for his counsel's errors, he would not

have pleaded guilty.[43] Therefore, the magistrate judge recommended that Pappas's federal *habeas*

*corpus* petition be dismissed with prejudice.[44]

## II. Objections

In Pappas's written objections to the magistrate judge's Report and Recommendation to deny

his *habeas* petition, Pappas lists his objections:

1. Failure to render recommendation for judgment on the claim of plea not being knowingly,

intelligently and voluntarily entered.

2. Failure to review all evidence in state court record.

3. Failure to accord a reasonable determination of facts.

4. Failure to reject state court findings as unreasonable in light of evidence in state court.

5. Failure to recognize Good-Time eligibility was a plea negotiated term.

6. Failure to recognize the significance of the twenty-seven (27) months Good-Time denied

to Movant in breach of the plea bargain.

7. Failure to recognize that Movant would not have entered plea, without Good-Time denied

eligibility being promised.

8. Recommending the habeas claim be dismissed with prejudice.

9. Failure to conduct an evidentiary hearing to permit introduction of evidence to support

habeas claim of ineffective assistance of counsel.

---

[43] Rec. Doc. 15 at p. 17 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

[44] *Id.* at p. 18.

10. Finding Movant would not have rejected plea agreement, if counsel had not erroneously advised him he would be eligible to earn 27 months Good-Time off his sentence.

11. Recommending habeas claim of ineffective assistance of counsel be dismissed with prejudice

12. Failure to address ineffective assistance claim related to erroneous advise [sic] of Parole eligibility.[45]

Pappas does not dispute the law as stated by the magistrate judge, and acknowledges that when he wishes to reverse a magistrate's finding on a question of pure fact, he is restricted to the state court record.[46] Pappas challenges the magistrate judge's determination that the incorrect assertion by his attorney, the judge, and the prosecutor that he was eligible for "good time" release was not critical in his acceptance of the plea because he received many other benefits. Pappas argues that 27 months is no small term, and weighed heavily on his decision to accept.[47] Further, Pappas claims that the state court never applied the two prongs of *Strickland*, and therefore the adjudication was contrary to clearly established federal law; in such circumstances, Pappas argues that a federal court can make this determination.[48]

Pappas continues to explain that before his plea agreement, he had rejected several offers for a more lenient sentence than the one he eventually received, because he wanted to go to trial. Finally, after being "worn down" he decided to plead guilty at the insistence of his attorney. On

---

[45] Rec. Doc. 16 at pp. 1-2.

[46] *Id.* at p. 2 (citing 28 U.S.C. § 2254(d)(2), (e)(1)).

[47] *Id.* at p. 5.

[48] *Id.* at p. 7 (citing *Pannetti v. Quarterman*, 551 U.S. 930, 948 (2007)).

April 27, 2009, Pappas entered his plea of guilty. On April 28, 2009, he claims he discovered from members in the prison that he would not be eligible for "good time." On April 20, 2009, three days after his guilty pleas, Pappas's attorney filed a "Motion to Reconsider and Reform Sentence."[49] Pappas has attached this document as "Exhibit A," but it is also part of the state record, and therefore it may be considered when challenging the magistrate judge's findings of fact.[50] In that motion, it states that Pappas entered into the plea agreement because it was premised on him being eligible for "good time" time deduction. Pappas uses this motion to refute the magistrate judge's contention that "good time" was not part of the plea negotiations.[51]

Pappas argues that the fact that he sought to withdraw his plea immediately after he discovered he could not receive "good time," and so soon after he entered the plea, is evidence that this formed a substantial part of his rationale for entering into the plea agreement.[52] Pappas also points to several affidavits, including his own, his attorney, an attorney assisting Pappas's lead counsel, and his attorney's secretary and paralegal, that were part of the state record, where these people state that they had knowledge that Pappas's eligibility for "good time" was "integral to his acceptance of the negotiated plea agreement."[53] Therefore, Pappas claims that the magistrate judge's finding that the assurances he was eligible for "good time' did not induce him to enter into the plea agreement is an unreasonable determination of the facts.

Pappas also disagrees with the magistrate judge's reasoning that while he believed he was

---

[49] *Id.* at p. 8.

[50] *See* Rec. Doc. 16-1 at p. 1.

[51] Rec. Doc. 16 at p. 9.

[52] *Id.*

[53] *Id.* at p. 10 (citing Rec. Doc. 16-1 at pp. 4-15)

eligible for "good time," it was not guaranteed. He argues that almost all prisoners who are eligible receive this benefit, and only "trouble makers lose their good time."[54] He points out that he has a spotless disciplinary record in prison.

Next, Pappas challenges the magistrate judge's finding that his claim for ineffective assistance of counsel must fail because he did not rely on the promise of being eligible for "good time" when entering into his plea bargain: "This assumption by the Magistrate was not supported by anything beyond her pure intuition seen through the lens of her rose colored glasses issues by the same government proxies Movant was railroaded by."[55]

Pappas also claims that the AEDPA is unconstitutional as violative of the First, Fifth, and Fourteenth Amendments because the "biased review mandated under the AEDPA and 42 U.S.C. § 2254 deprives Movant of meaningful access to the federal judiciary in his federal habeas corpus action."[56] He argues that through these laws, Congress has impermissible usurped the province of the judiciary in rending its own judgment, and therefore offends separation of powers.[57]

Returning to the magistrate judge's reasoning, he argues that "[t]he state has 'never' voiced the particulars set forth by the Magistrate to justify the denial of relief herein. Hence, Movant was not in a position to specifically address each and every area at issue in the Magistrate's Report, previously. Here, Movant has overcome the adversary's counsel, only to be confronted by an adversary in the federal Magistrate."[58] Therefore, Pappas requests that he be given an opportunity

---

[54] *Id.* at pp. 10-11.

[55] *Id.* at p. 11.

[56] *Id.* at pp. 11-12.

[57] *Id.* at pp. 11-12, 19-21.

[58] *Id.* at p. 14.

for an evidentiary hearing before the magistrate to meet his burden on these claims.[59] In addition, Pappas provides a list of witnesses he would present at the evidentiary hearing that would testify and give support to his contention that his belief that he was eligible for "good time" was critical to his acceptance of a plea bargain.[60] In the alternative, Pappas asks that the magistrate judge be overruled, his counsel be found to be ineffective, and his guilty plea convictions be reversed and remanded to state court for trial.[61]

### III. Standard of Review

A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[62] A district judge may designate a magistrate judge to conduct an evidentiary hearing and propose findings of fact and recommendations.[63] "[T]he district judge must determine *de novo* any part of the [report and recommendation] that has been properly objected to."[64] However, within the Fifth Circuit, a district court's review is limited to plain error on parts of the report which are not properly objected to.[65]

### IV. Law and Analysis

#### A. Pappas's Request to Withdraw Unexhausted Claim

---

[59] *Id.* at p. 15.

[60] *Id.* at p. 18.

[61] *Id.*

[62] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[63] 28 U.S.C. § 636(b)(1)(A)-(B).

[64] Fed R. Civ. P. 72(b)(3).

[65] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. 636(b)(1) (extending time to file objections from ten to fourteen days).

15

The magistrate judge found in favor of Pappas on this matter, and for that reason he has not challenged this part of the magistrate's Report and Recommendations. The law cited above is clear that Pappas is entitled to withdraw an unexhausted claim so that he can proceed on exhausted claims.[66] Therefore, the Court will adopt this aspect of the magistrate judge's recommendation.

**B. Pappas's Remaining Claims**

As both Pappas and the magistrate judge have acknowledged, the AEDPA imposes a very high burden upon Pappas to succeed on this claim. While steep, it is not insurmountable and a petitioner may prevail upon a proper showing of proof.[67] The magistrate judge recommended dismissing Pappas's petition for *habeas* relief with prejudice and before an evidentiary hearing. Therefore, this Court will analyze whether that was proper with regard to his two remaining claims.

*1. Invalid Guilty Pleas*

The magistrate acknowledged that misrepresentations had been made to Pappas by the state court judge, prosecutor, and his attorney regarding his eligibility for "good time." However, she found that Pappas could not meet his burden of proof that the plea was not knowing and voluntary, because he had no evidence that the plea rested "in any significant degree on a promise of the prosecutor."[68] Specifically, the magistrate judge determined that she had to defer to the state court

---

[66] *See Rose*, 455 U.S. at 510.

[67] *Harrington*, 131 S.Ct. At 786-87.

[68] *Santobello*, 404 U.S. at 262.

decision because "there is no evidence that the eligibility for 'good time' was a negotiated term of the plea agreement."[69]

However, as Pappas has successfully demonstrated, this is not true. Pappas's initial motion to alter or modify his guilty plea specifically stated that he was under the false impression that he was eligible for "good time."[70] Moreover, he has provided this Court with several affidavits of people attesting to the importance of the "good time" eligibility in his decision to accept the plea agreement. In light of this, the magistrate judge was incorrect to claim that no evidence existed and recommend the dismissal of his petition without even an evidentiary hearing.

Upon the record, this Court cannot yet determine if Pappas would be able to meet his steep burden on this claim. However, he has presented the Court with enough to convince it that he is entitled to an evidentiary hearing wherein he may present this evidence and seek to prove his claims. Therefore, this Court will order that the magistrate judge conduct an evidentiary hearing on the merits of this claim that Pappas's guilty pleas were invalid because they were given as a result of misrepresentations made to Pappas by his counsel, the prosecutor, and the state court judge.

### 2. Ineffective Assistance of Counsel

Under *Strickland*, a petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[71] The magistrate only addressed the second prong, but it is almost certain that counsel's actions were deficient. Using the same reasoning employed in regard to Pappas's previous claim, the magistrate judge found that Pappas could not

---

[69] Rec. Doc. 15 at p. 13.

[70] Rec. Doc. 16-1 at p. 1.

[71] 446 U.S. at 697.

satisfy the second prong because he could not show that he would have rejected the plea bargain had he known he was not eligible for "good time."[72]

In *James v. Cain*,[73] the petitioner, an innate in state prison, filed for federal *habeas* relief claiming ineffective assistance of counsel. Specifically, the petitioner argued that when he entered into his plea agreement he believed he would be eligible for parole in forty years, but in fact, state law would require the governor first to decide to commute his sentence before he could even have a parole hearing. The petitioner complained that his counsel never informed him of this procedure. The district court denied the petitioner's claims finding that the petitioner could not show prejudice. On appeal, the Fifth Circuit noted that the only evidence in the record on this issue was the testimony of the petitioner and the affidavit of petitioner's trial attorney. The petitioner claimed that he was told by his attorney that he "would make parole in 40 years," while the trial counsel's affidavit stated that he did not remember saying anything about parole procedure, but it was his ordinary practice to "fully apprise his client of the effects of a plea agreement."[74] The Fifth Circuit stated that "affirmatively erroneous advice of counsel" is more "objectively unreasonable" than a mere failure to inform. Therefore, the Fifth Circuit held that the district court erred in dismissing the petition and remanded for the district court to determine if the attorney's actions were objectively unreasonable, if he affirmatively misinformed the petitioner, and if that prejudiced the petitioner.[75]

---

[72] Rec. Doc. 15 at p. 17.

[73] 56 F.3d at 662.

[74] *Id.* at 667.

[75] *Id.* at 668.

Here, as the this Court determined in connection with Pappas's previous claim, there is evidence in the record to support Pappas's contention. Not only does Pappas claim that he was affirmatively misinformed by his attorney and as a result prejudiced, but his attorney has corroborated this in his own sworn affidavit.[76] Therefore, in this matter, the evidence of an affirmative and prejudicial misrepresentation in even greater than that in *James*, and Pappas thus is entitled to an evidentiary hearing to attempt to satisfy his burden on his ineffective assistance of counsel claim.

*3. Constitutionality of AEDPA*

In his objections, Pappas has challenged the constitutionality of the AEDPA. As Pappas will receive an evidentiary hearing and may ultimately receive the relief he seeks, this Court finds that a determination on the constitutionality of this law would be premature at this time.

## V. Conclusion

For the reasons stated above, Pappas may withdraw his unexhausted claim, so that he may proceed with his exhausted claims. Moreover, this Court finds that he is entitled to an evidentiary hearing before the magistrate judge in order to try meet his burden on his claims that his guilty pleas were invalid and for ineffective assistance of counsel. Accordingly,

**IT IS HEREBY ORDERED** that the Magistrate Judges's Report and Recommendation[77] is **ADOPTED IN PART** and **REJECTED IN PART**;

**IT IF FURTHER ORDERED** that Pappas may withdraw his unexhausted claim and proceed on his exhausted claims;

---

[76] Rec. Doc. 16-1 at pp. 4-8.

[77] Rec. Doc. 15.

**IT IF FURTHER ORDERED** that Pappas receive an evidentiary hearing before the magistrate judge so that he may present evidence in connection to his claims that his guilty pleas were invalid and regarding his claim of ineffective assistance of counsel.

**NEW ORLEANS, LOUISIANA**, this 26th day of February, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

20